Cole *v.* Cole.

———————◆———————

VEDER COLE *vs.* WELCOME COLE, executor of &c. of William Cole, deceased, and others.

A testator, by the 2d and 3d clauses of his will, devised as follows: "Second. I give, devise and bequeath unto my son Veder, all my certain farm on which I now reside, situate, &c., and all my farming utensils and household furniture, &c., to have and to hold the same unto him, his heirs and assigns forever, subject, however, to the payment by my son Veder, of the sum of $200 to each of the following named persons, viz., to my sons Welcome, William and Calvin, and to the widow of my son Alpheus; the aforesaid legacies to be paid by my said son Veder, the one half part in one year, the other half part in two years, from the time of my decease. Thirdly. All the rest and residue of my *personal estate* that shall be and remain after the payment of my just debts and funeral expenses, and the legacies to my grandchildren, I give and bequeath unto my sons Welcome, William and Calvin, and to the widow of my son Alpheus, equally, to be divided between them, share and share alike; and what receipts I may have at the time of my decease, against my said sons and grandsons, to be charged them severally. And also what receipts I hold against my deceased son, Alpheus, to be charged to his widow as payment towards her legacy, and no charge for interest is to be made on any of said receipts, in the settlement of my estate."

Cole *v.* Cole.

The testator owed no debts at the time of his decease. He had no real estate, except the farm devised to his son Veder. He left about $800 of personal property, besides his household furniture and farming utensils. The testator began to advance money to his children in 1827, and continued to advance until 1860, taking receipts which stated that the child signing them received the money *towards his portion of the estate of the testator.* The receipts signed by Welcome and William showed that each had received prior to the date of the will $503.50, and $140 in June, 1860, after the date of the will. Those signed by Calvin showed that he had received $300 before the date of the will, and $200 in April, 1859. Those signed by Alpheus were dated prior to the will, and showed that he had received $500, and $140 was paid to his widow, in June, 1860. No advancements were made to Veder, but the farm devised to him was worth over $5000.

*Held,* 1, That if the will clearly indicated that the personal estate of the testator was to be exonerated from the payment of the $200 each, charged upon the farm devised to Veder, it was the duty of the court not to disappoint that intent of the testator; and that such was the intention was too clear for argument.

2. That the language of the will being that the receipts which the testator held against Alpheus should be charged to his widow "as payment towards her legacy," when two legacies were given to her, the fair import of the language used was that such receipts should be a payment towards the legacy mentioned in the third clause of the will, and not a payment towards the two legacies given to the legatee.

3. That the intention of the testator was, that in the division of the residuary portion of his personal estate into four legacies, the money advances he had made to his four sons previous to the date of his will, and the sums he should thereafter advance to the three survivors, as should appear from their receipts, should be charged to those three and the widow of the deceased son, severally, so that each of said sons living would receive an equal share of his personal estate; and that the advances to Alpheus, and what his widow would receive, would be just equal to the advances made to each of said living sons with what each of such sons would receive on said division. That in that case they would share alike, though one received more than another before the death of the testator, and would receive less than another thereafter.

4. That the only object the testator had in requiring that the advances he made to his sons should be charged to them and to the widow of Alpheus, was that the division of the residuary portion of his personal estate would be so made that they would share alike in his estate, taking into consideration what they had received, as well as what they would receive therefrom.

5. That a construction of the will that would make the advances of the testator, or the receipts he had, satisfy the four $200 legacies that Veder was required to pay, would render unnecessary and useless that portion of the will which gave those legacies and required Veder to pay them.

Cole *v.* Cole.

:Veder was accordingly ordered to pay the four legacies of $200 each, to the persons named in the second clause of the will; and such legacies, with interest thereon from the time they should have been paid, were adjudged to be a charge upon the farm devised to him.

THIS action was brought to obtain a judicial construction of the last will and testament of William Cole, late of Richfield, Otsego county, deceased. It was referred to a referee to hear and determine. Upon his decision a judgment was entered, in the office of the clerk of Otsego county, in February, 1868. From which judgment the defendants, Welcome Cole, executor, William Cole and Ada Cole, appealed to the general term of this court. The other defendants did not defend the action.

*J. S. Davenport* and *E. M. Card*, for the plaintiff.

*Sedgwick, Andrews & Kennedy*, for the defendants.

*By the Court*, BALCOM, P. J. The deceased, William Cole, executed the will in question on the 4th day of July, 1857. He died on the 17th day of February, 1863. The will was proved before the surrogate of Otsego county and admitted to probate by him; and the defendant Welcome Cole qualified as executor of the will before this action was brought.

The questions in the case arise on the following clauses of the will, viz: "Second. I give, devise and bequeath unto my son Veder Cole, all my certain farm on which I now reside, situate in the town of Richfield, and all my farming utensils and household furniture of which I may die possessed, to have and to hold unto him, his heirs and assigns forever; *subject, however, to the payment by my son Veder, of the sum of two hundred dollars to each of the following named persons, viz : to my sons Welcome, William and Calvin Cole, and to the widow of my son Alpheus ; the aforesaid legacies to be paid by my said son Veder, the one half part in one year, the other*

*half part in two years from the time of my decease.* Thirdly. All the rest and residue of my *personal estate* that shall be and remain after the payment of my just debts and funeral expenses, and the legacies to my grandchildren, I give and bequeath unto my sons Welcome, William and Calvin, and to the widow of my son Alpheus, equally, to be divided between them, share and share alike; and what receipts I may have at the time of my decease, against my said sons and grandsons, to be charged them severally. And also, what receipts I hold against my deceased son, Alpheus, to be charged to his widow as payment towards her legacy; and no charge for interest is to be made on any of said receipts, in the settlement of my estate."

The testator did not owe any debts at the time of his death. He had no real estate except the farm devised to his son Veder Cole. He left about $800 of personal estate, besides his household furniture and farming utensils. He began to advance money to his children as early as 1827, and continued to do so until in the year 1860. He took receipts therefor, which he had at the time of his decease, that stated the child signing them received the money therein mentioned of him *towards his portion of the estate of the testator.*

The receipts signed by Welcome Cole showed that he received, prior to the date of the will, $503.50; and that he received $140, June 22, 1860, which was subsequent to the date of the will. Those signed by William Cole showed he received $503.50 before the date of the will, and that he afterwards received $140, June 22, 1860. Those signed by Calvin Cole showed he received $300 before the date of the will, and that he afterwards received $200, April 27, 1859. Those signed by Alpheus Cole, deceased, were dated in 1839 and 1853, and showed he received $500. A receipt signed by Ada Cole, widow of Alpheus, showed she received $140, June 22, 1860.

The testator left receipts signed by his grandchildren,

Cole *v.* Cole.

to whom he gave specific legacies in his will, dated subsequent to the date of the will, showing he had advanced to each of them the precise amount of his legacy. Those legacies were not made a charge upon the real estate of the testator, and no question is now raised but that they were satisfied by the advancements shown by the receipts signed by the grandchildren to whom such legacies were given..

It does not appear that any advances were made by the testator to Veder Cole for which receipts were given; but the farm devised to him was worth over $5000.

The particular legacies of $200 each to Welcome, William and Calvin Cole, and to the widow of Alpheus Cole, deceased, were to be paid by Veder Cole, and he took the farm devised to him, *subject* to the payment thereof. In no contingency were such legacies to be paid out of the personal estate of the testator. They could not be paid out of his personal estate. His household furniture and farming utensils were worth about $50, and the same were specifically bequeathed to Veder Cole; and all the residue of his personal estate, except two legacies of $50 each to two of his grandchildren, was given to the same legatees, share and share alike, to whom said legacies of $200 each were bequeathed. He had no real estate except the farm devised to Veder Cole. The four legacies of $200 each were made a charge upon that farm, and they were to be paid by Veder Cole, and not by the executors named in the will, or by any other person.

Veder Cole took the farm on condition that he pays the four legacies charged thereon, and " upon the *further* express condition " that he makes no charge against the estate of the testator for any labor or services he performed for him, as the testator declared he considered what he gave him by his will was an ample remuneration for all such services, over and above what would be his, Veder's, share of the testator's estate.

The four legacies of $200 each are not bequeathed to the four persons to whom they are to be paid, except inferentially. But the legacies mentioned in the third clause of the will (which clause is the residuary part of the will) are expressly given unto such four persons, by the testator.

There can be no doubt, if the will clearly indicates that the personal estate of the testator was to be exonerated from the payment of the four legacies of $200 each, charged upon the farm devised to Veder Cole, it is the duty of the court not to disappoint that intent of the testator. That such was the intention of the testator is not a debatable question. It is too clear for argument.

What did the testator mean by declaring that what receipts he might have at the time of his decease, against his said sons and grandsons, should be charged to them severally; and also that what receipts he held against his deceased son, Alpheus, should be charged to his widow as payment towards her legacy? Those declarations follow the bequests in the third clause of the will, which in no way relate to the four legacies that are charged upon the farm devised to Veder Cole in the second clause of the will. At the time the will was executed, the advances made by the testator to his three sons, and the widow of the fourth son, were unequal, and they were unequal at the time of his death.

Two legacies were given to the said widow of the deceased son, Alpheus; but the language of the will is, that the receipts which the testator held against Alpheus should be charged to his widow "as payment towards her legacy." The fair import of this language is, that such receipts should be a payment towards the legacy mentioned in the third clause of the will, and not a payment towards the two legacies given to such widow.

In my judgment, the intention of the testator was, that in the division of the residuary portion of his personal estate into four legacies, the money advances he

made to his sons Welcome, William, Calvin and Alpheus, previous to the date of his will, and the sums he should thereafter advance to said Welcome, William and Calvin, as should appear from their receipts, should be charged to said Welcome, William, Calvin and the widow of Alpheus, severally, so that each of said sons living would receive an equal share of his personal estate, and that the advances to Alpheus, and what his widow would receive, would be just equal to the advances made to each of said living sons, with what each of such sons would receive on said division. In that case they would share alike, though one received more than another before the death of the testator, and would receive less than another thereafter.

To illustrate : Welcome and William each received $643.50 from the testator before he died. But Calvin received only $500. Of course Calvin must receive more out of the estate since the death of the testator than either Welcome or William, to share alike with the two latter in the whole estate from the time advances were first made to either of them.

It seems to me the only object the testator had in requiring that the advances he made to his sons should be charged to them and to the widow of Alpheus, was that the division of the residuary portion of his personal estate would be so made that they would share alike in his estate, taking into consideration what they had received as well as what they would receive therefrom.

At the date of the will the testator had advanced to each of his sons, Welcome, William, Calvin and Alpheus, over two hundred dollars. The will required Veder to pay to Welcome $200, William $200, and Calvin $200, and to the widow of Alpheus $200, on condition that Veder should take the farm devised to him. Why should the testator require Veder to pay said four legacies of $200 each, if he intended the advances he had made to the leg-

atees should operate to discharge such legacies? A construction of the will that would make the advances of the testator, or the receipts he had, satisfy the four $200 legacies that Veder was required to pay, would render that portion of the will unnecessary and useless which gives those legacies and requires Veder to pay them. But the construction which shows the advances of the testator should only be considered in dividing the residuary portion of the personal estate of the testator, mentioned in the third clause of the will, makes every part of the will necessary. It gives effect to the entire will, and harmonizes all its part with the facts on which the testator acted in making it.

It is not disputed but that the $140 advanced by the testator to the widow of Alpheus on the 22d day of June, 1860, (which was after he made his will,) must be charged to her in making the division pursuant to the third clause of the will. That money, with the advances made to her husband, makes the sum of $540, which must be charged to her in making such division.

According to the foregoing views, Veder Cole must pay the four legacies of $200 each to the persons named in the second clause of the will; and such legacies, with interest thereon from the time they should have been paid, are a charge upon the farm devised to him, and should be so adjudged in this action.

If the foregoing conclusions are correct, the decision of the referee was erroneous, and the judgment entered thereon should be reversed, and a new judgment entered, in conformity with such conclusions.

So decided, and the plaintiff adjudged to pay costs.

[BROOME GENERAL TERM, November 17, 1868. *Balcom, Boardman* and *Parker,* Justices.]